IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TROY L. STINSON | : | |
| | : | |
| Plaintiff, | : | Case No. 2:11-CV-651 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : : | Magistrate Judge Norah McCann King |
| | : | |
| Defendant. | : | |
| | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant The Prudential Insurance Company of America's ("Defendant" or "Prudential") Motion to Dismiss the Complaint filed by Plaintiff Troy L. Stinson ("Plaintiff" or "Stinson").  (Doc. 3, 7.)  For the reasons stated herein, this Court **GRANTS** Defendant's Motion to Dismiss.

### II. BACKGROUND

*A. Factual Background*

Plaintiff is a resident of Piketon, Ohio, and his deceased wife, Gretchen Y. Stinson ("Decedent"), was also a resident of Piketon.  Prudential is a life insurance company authorized to transact business in the State of Ohio, with its principal place of business in Newark, New Jersey.  Decedent was a teacher in the Scioto Valley Local School District and licensed by the Ohio Department of Education.  Decedent was also a member of the National Education Association ("NEA"), which is a labor union for educators.

1

Plaintiff alleges that "Prudential underwrote the Accidental Death and Dismemberment Plan held by the NEA Member Insurance Trust, policy GC 31490," and that Decedent was a primary insured under that plan. (Compl. at ¶ 3.) Plaintiff explains in his Complaint, however, that he failed to attach a copy of the relevant plan because "Plaintiff has not been able to timely procure a verifiably accurate copy of it prior to the commencement of this action." *Id.* Defendant attaches a copy of a document, entitled "Your NEA Insurance Booklet and Certificate," ("Booklet") to its Motion to Dismiss which Defendant states contains information about the plan at issue in this lawsuit; the "NEA Members Insurance Plan." (Doc. 7, 7-1.) Plaintiff concedes in his Memorandum Contra to Defendant's Motion to Dismiss ("Memorandum Contra") that the NEA Members Insurance Plan ("Plan") is the plan at issue in this lawsuit.[1] While as a general rule, courts are not to consider matters outside of the pleading when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), an exception arises when a plaintiff fails to introduce pertinent documents as part of his or her pleading, and the defendant may then introduce those documents in exhibits as part of a Rule 12(b)(6) motion, *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002).[2] As the Sixth Circuit has

---

[1] Plaintiff states as follows: "Prudential supported its motion with a purported copy of 'the plan booklet.' Although the exhibit is not verified or authenticated, Mr. Stinson does not have any reason to believe that those materials are inaccurate. The exhibit is incomplete because it lacks the schedule of benefits face page issued to the individual holding the certificate. As it is, however, the material in Exhibit [1] expands upon the underlying facts that can be reasonably inferred from Plaintiff's allegations." (Doc. 10.) Plaintiff then proceeds to cite a number of facts that can be gleaned from the Booklet. This Court takes this statement, along with Plaintiff's references to the Booklet and Plan, to be a concession that Defendant has provided information about the plan at issue in this lawsuit.

[2] *See also Dirkes v. Cont'l Cas. Co.*, No. 1:05-cv-254, 2006 U.S. Dist. LEXIS 57448, at *6 n.1 (S.D. Ohio Aug. 16, 2006) (explaining that an exception to the general rule that matters outside of the pleading are not to be considered in deciding a motion to dismiss arises when "a defendant attaches documents to a

explained, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Therefore, when deciding Defendant's Motion to Dismiss, this Court may properly consider the Booklet containing information about the Plan that was incorporated by reference in the Plaintiff's Complaint.

Pages 24 through 28 of the Booklet contain a "Summary Plan Description." (Doc. 7-1 at 24–28.) NEA sponsors the Plan, which provides "NEA members with group insurance benefits in the event of death, accident, sickness, disability, or other occurrences affecting members and families." *Id.* at 25. The benefits are funded by one or more group insurance policies acquired and maintained by the trustees of the NEA Members Insurance Trust. The Life and Accidental Death & Dismemberment Insurance[3] is open to NEA members on a voluntary basis. Participants select the type of coverage they want, pay the entire cost themselves, and NEA does not contribute to the cost of coverage, except during total disability waiver. The Booklet explicitly

---

motion to dismiss that are central to the Plaintiff's complaint"; that "if a plaintiff raises issues that require consideration in terms of an ERISA plan, the court may properly consider exhibits setting forth the terms of the ERISA plan at issue in deciding the motion to dismiss"; and the court is not obligated to convert the defendant's motion to one for summary judgment when considering these documents); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("Plaintiff references the 'plan' numerous times in his complaint. Although plaintiff maintains that the complaint referred only to the 'plan' as an entity and not to the 'plan documents,' his claims are based on rights under the plans which are controlled by the plans' provisions as described in the plan documents. Thus, we will consider the plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.").

[3] The Life and Accidental Death & Dismemberment Insurance is referred to by different names throughout the Booklet. For example, page 8 refers to the "Group Accidental Death and Dismemberment Insurance program," and page 25 refers to the "Life and Accidental Death and Dismemberment Insurance" and the "Life and/or Accidental Death & Dismemberment programs." (Doc. 7-1 at 8, 25.) To remain consistent, this Court will refer to the insurance as the Life and Accidental Death & Dismemberment Insurance.

3

states that the purpose of the Summary Plan Description is to "inform [the participant] about the Plan's structure," and "is being furnished to [the participant] in compliance with the Employee Retirement Income Security Act of 1974 (ERISA)." *Id.*

Participants in the Plan "are entitled to certain rights and protections under ERISA." *Id.* at 27. Those right are summarized in the Summary Plan Description and include: the right to examine documents and contracts associated with the Plan, the right to copy those documents, and the right to obtain a summary financial report. The Summary Plan Description also explains that ERISA imposes duties on NEA, the trustees who operate the Life and Accidental Death & Dismemberment Insurance, and Prudential. These entities are fiduciaries, and specifically, Prudential is the "appropriate named fiduciary for purposes of the enrollment process, claim settlement, and review of denied claims." *Id.* Moreover, the processes by which a participant can contest a claim for a benefit that has been denied are described, and a participant is told that if his or her claim is denied or ignored, he or she "may file suit in a state or federal court." *Id.*

During all relevant times, Plaintiff alleges that he was a beneficiary of the Life and Accidental Death & Dismemberment Insurance under the Plan. On or about November 12, 2008, Decedent died as a result of accidental bodily injuries that she sustained on October 28, 2008. As a result, Plaintiff became eligible for benefits under the Life and Accidental Death & Dismemberment Insurance, making Prudential liable to Plaintiff in a total amount of $60,000. Plaintiff alleges that he has given Prudential notice and proof of his claim, performed all necessary conditions of the Plan, filled out all of the requested proof of losses, acted in good faith, and exhausted all administrative remedies under the Plan. Nevertheless, Prudential rejected his claim for benefits in its entirety.

Prudential disputes the facts related to Plaintiff's claim, and contends that Plaintiff's claim was denied in a letter dated December 14, 2009[4] on the basis that Decedent died "as the result of medical treatment of a sickness, which is expressly stated as a non-covered loss under the terms of the Plan." (Doc. 7.) Prudential also contends that Plaintiff never appealed Prudential's decision, despite the fact that the Plan provides Plaintiff with an opportunity to do so.

*B. Procedural Background*

On or around June 15, 2011, Plaintiff filed his Complaint in the Court of Common Pleas for Pike County, Ohio. Prudential removed this case in late July, pursuant to 28 U.S.C. § 1332, on the grounds that there is complete diversity jurisdiction, and also pursuant to 28 U.S.C. § 1331, on the grounds that there is federal question jurisdiction because this Court must determine whether Plaintiff's claims are preempted in whole or part by ERISA. Stinson did not file a motion for remand. Shortly thereafter, Prudential filed this Motion to Dismiss, which is ripe for review.

---

[4] Prudential attaches the December 14, 2009 letter to its reply brief and urges this Court to consider the letter when deciding the Motion to Dismiss because, Prudential argues, the letter is referenced in the Complaint and is central to Plaintiff's claims. (Doc. 13) (citing (Compl. at ¶ 10) ("Prudential has rejected Plaintiff's claim for accidental death benefits in whole; and, although due demand for such benefits have been made by Plaintiff, Prudential has failed and refuses to provide such coverage benefits to Plaintiff.")). This Court declines Prudential's invitation to consider the letter at this stage in the litigation. First, Plaintiff's Complaint does not specifically reference the letter. Next, because Prudential attached the letter to its reply brief rather than to its Motion to Dismiss, Plaintiff has not had the opportunity to voice its opinion on the accuracy or relevance of the letter. *See Thomas*, 29 F. App'x at 322–23 (explaining that district court correctly took into consideration documents attached to defendant's motion to dismiss where plaintiff failed to object to their inclusion in his response brief). Finally, it is unnecessary for this Court to consider this letter when deciding whether Plaintiff's claims are preempted by ERISA.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he or she pled enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Additionally, the Court must accept as true allegations of fact contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975).

When a complaint is dismissed for failure to state a claim upon which relief can be granted, the statement of the claim itself is defective as a matter of the applicable substantive law. Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2004). However, in the situation where an affirmative defense bars a claim, the claim is stated adequately, but in addition to the claim, the contents of the complaint include "matters of avoidance that effectively vitiate the pleader's ability to recover on the claim." *Id.*; *see Riverview also Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting Wright & Miller).

## IV. LAW & ANALYSIS

### *A. Subject Matter Jurisdiction*

As a preliminary matter, this Court must address subject matter jurisdiction issues raised by Plaintiff in his Memorandum Contra. It is not clear to the Court whether Plaintiff is contesting this Court's subject matter jurisdiction, but for ease of analysis, the Court will treat Plaintiff's arguments as such a challenge.

Plaintiff argues that the amount-in-controversy in this case depends on whether this Court determines that the Plan is an ERISA-qualified plan as Defendant urges. Plaintiff alleges $60,000 is due under the Life and Accidental Death & Dismemberment Insurance, and an unspecified amount is due in punitive damages as a result of the bad faith claim. In Prudential's Notice of Removal, it states that given damages alleged, the total damages exceeded the jurisdictional threshold of $75,000. But Plaintiff argues that a proceeding under ERISA does not allow for punitive damages, and that "[t]he claim that an action should be removed because of the amount in controversy exceeds the threshold criteria of $75,000 when the same act of removal will reduce the contested amount below that level is nonsensical." (Doc. 10) (citing 29 U.S.C. § 1132(a)(3); *Allinder v. Inner-City Prod. Corp.*, 152 F.3d 544, 552 (6th Cir. 1998)).

Plaintiff's reasoning is flawed. Prudential removed this case on *two alternative jurisdictional grounds*. Prudential asserted in its Notice for Removal that there is diversity jurisdiction in this case because the Plaintiff is a resident of Ohio, Prudential is a corporation with its principal place of business in New Jersey, and the amount-in-controversy exceeds of $75,000. Prudential then explains that this case is *also* removable because there is a federal question as to whether Plaintiff's claims are preempted by ERISA. Plaintiff does not set forth

arguments contesting either of these grounds individually, and therefore, the Court finds that this case has been properly removed to this Court.

*B. ERISA Preemption*

Prudential asks this Court to dismiss Plaintiff's claims because they are based entirely on state law and as a result, are preempted by ERISA. In its Motion to Dismiss, Prudential contends that ERISA preempts all state law claims that "relate to any employee benefit plan," and that a claim "relates to" an ERISA plan where "it has a connection with or reference to such a plan." (Doc. 7) (citing 29 U.S.C. § 1144(a); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). Prudential cites Sixth Circuit case law to support its position that state law claims to recover benefits under an ERISA-regulated plan "relate to" the Plan.

Plaintiff argues his claims are not preempted by ERISA because the Plan is not established or maintained by an employer or employee organization and qualifies as a "governmental plan" which is exempt under ERISA. Plaintiff relies entirely on a case from the Ninth Circuit, *Daniels-Hall v. National Education Association*, to support its arguments. 629 F.3d 992, 995 (9th Cir. 2010). Prudential retorts that the *Daniels-Hall* case is distinguishable; NEA is an employee organization not a governmental entity, and therefore, the Plan cannot be categorized as a governmental plan; and the Plan informs its participants that it is governed by ERISA, and is, therefore, subject to ERISA.

ERISA does, in fact, preempt all state law claims which "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has said that a state law claim relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97. "Congress was concerned that state laws might interfere with the administration and management of such plans." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440

n.2 (6th Cir. 2010) (internal citations omitted). A state common law suit "for alleged improper processing of [] claims for benefits under [an] ERISA-regulated benefit plan" is preempted under ERISA, *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 41 (1987), as are bad faith breach of insurance contract claims, *Tolton v. American Biodyne*, 48 F.3d 937, 941 (6th Cir. 1995).

An "employee benefit plan" under ERISA is defined as "an employee welfare benefit plan or an employee pension benefit plan[5] or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, *death* or unemployment, or vacation *benefits* . . . .

29 U.S.C. § 1002(1) (emphasis added). An "employee organization" is defined under ERISA as a "labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." 29 U.S.C. § 1002(4).

---

[5] An "employee pension benefit plan" is defined as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program— (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A). The Plan at issue in this case is an employee welfare benefit plan, not an employee pension benefit plan.

9

"[B]y its express terms, ERISA encompasses welfare plans provided through the purchase of insurance." *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992), *rev'd on other grounds Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004).  Nevertheless, the United States Department of Labor ("DOL") has promulgated regulations that provide certain insurance and benefit plans are excluded from ERISA's coverage.  Under the regulations, the term "employee welfare benefit plan" does not include:

> [A] group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  A plan is exempt under ERISA only if all four of the "safe harbor" criteria are satisfied. *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 435 (6th Cir. 1996). Usually the factor that proves most difficult to analyze is the third, specifically determining what constitutes an "endorsement" of a Plan within the meaning of the regulation.  This Circuit held that "finding an endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Id.* at 436.  Moreover,

10

> where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework.

*Id.* at 437 (internal citations omitted).  The *Thompson* Court also held that to qualify as an ERISA-plan a court must inquire whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of the financing, and the procedures for receiving benefits," *id.* at 435 (citing *International Resources, Inc. v. New York Life Insurance Company*, 950 F.2d 294, 297 (6th Cir. 1991)), and if the employer established or maintained the plan with the intent of providing benefits to its employees, *id.* (citing *McDonald v. Provident Indemnity Life Insurance Company*, 60 F.3d 234, 236 (5th Cir. 1995)).

The Plan at issue here falls under the definition of an "employee welfare benefit plan," because it is a "plan . . . which was heretofore or is hereafter established or maintained . . . by an employee organization . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . death . . . benefits . . . ." *See* 29 U.S.C. 1002(1).  NEA is an "employee organization" because it is a labor union that exists in part to deal with employers concerning an employee benefit plan.  *Pettit v. The Prudential Ins. Co. of America*, No. 5:98-cv-00690, slip op. at 11 (W.D. Tex. Aug. 17, 1999) (characterizing NEA as the "plan sponsor and ERISA 'employee organization'").  Moreover, the benefits at issue in this case are death benefits.

This Court must next determine whether the Plan is excluded from ERISA's coverage under the DOL regulations.  The first factor appears to be satisfied, but NEA does contribute "during total disability waiver."  (Doc. 7-1 at 25) ("NEA does not contribute to the cost of these

11

overages except for contributions during total disability waiver."). The second factor is easily satisfied because the Summary Plan Description states that "[p]articipation for Life and Accidental Death & Dismemberment Insurance is open to NEA members on a voluntary basis." *Id.* The third factor, however, is problematic. Under the *Thompson* Court's precedent, NEA is endorsing the Plan. The Summary Plan Description "specifically refers to ERISA in laying out the employee's rights under the policy." *Id.* at 25, 27 ("This plan is being furnished to you in compliance with the Employee Retirement Income Security Act of 1974 (ERISA)"; "Your rights under ERISA"; "As a participant in the NEA Members Insurance Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)"; "Under ERISA, there are steps you can take to enforce your rights."); *see also Thompson*, 95 F.3d at 437. The Plan, therefore, is not exempt under the DOL regulation's safe harbor. *See* 29 C.F.R. § 2510.3-1(j). Because the third factor is not satisfied, this Court does not need to examine the fourth. *Thompson*, 95 F.3d at 435 (explaining all four factors must be satisfied to be exempt under the safe harbor).

Moreover, this Court thinks that "a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of the financing, and the procedures for receiving benefits," and that NEA established or maintained the plan with the intent of providing benefits to its employees. *Id*. The Plan makes clear that its purpose is to provide members of NEA with "group insurance benefits in the event of death, accident, sickness, disability, or other occurrences affecting members and their families"; that the Plan is financed through the NEA Members Insurance Trust; and that there is a claims procedure for receiving benefits. (Doc. 7-1 at 25−28.) Moreover, NEA established and maintains the program with the intent of providing benefits to NEA members. *See, e.g.*, *id.* at 2 ("We are pleased to present you with this Booklet.

12

It describes the Program of benefits you have selected through the NEA Members Insurance Trust and what you must do to be covered for these benefits.  We believe this Program provides you worthwhile protection for you and your family.").

The arguments made by Plaintiff in his Memorandum Contra are unconvincing.  First, it is clear that the Plan is not a "governmental plan."  A "governmental plan" as defined under ERISA is a plan that is "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).  The Plan is *not* established or maintained by the Scioto Valley Local School District but by the NEA, which this Court has already explained is an employee organization under ERISA.  It is because the Decedent was a teacher in the Scioto Valley Local School District that she could become a member of the NEA, but that does not mean that the Plan was established and maintained by the District.

Next, the *Daniels-Hall* case is distinguishable and not controlling.  It is factually and legally distinguishable because it dealt with tax-shelter annuities that the NEA was endorsing and marketing.  629 F.3d at 995.  NEA worked with Nationwide Life Insurance and Security Benefit Life Insurance Company to offer NEA members annuities called Valuebuilder annuities.  *Id.* at 995–96.  The Ninth Circuit's analysis dealt with the definition of an employee *pension* benefit plan rather than a employee *welfare* benefit plan.  *Id.* at 999.  Moreover, a different DOL regulation and safe harbor was at issue—one that exempted certain section 403(b) retirement plans from ERISA's requirements.  *Id.* at 1000.

### C. Leave to Amend

Prudential argues that Plaintiff should be denied leave to amend his Complaint to assert claims arising under ERISA because Plaintiff failed to exhaust his administrative remedies under

13

the Plan. (Doc. 7) (citing *Hill v. Blue Cross & Blue Shield*, 409 F.3d 710, 717 (6th Cir. 2005) ("[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing suit for recovery on an individual claim."); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) ("The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.")). Prudential cites a number of cases in which this Circuit has dismissed a complaint without prejudice for failure to exhaust administrative remedies prior to filing the lawsuit. *See, e.g.*, *Falandays v. Penn Treaty Am. Corp.*, 114 F. App'x 738, 738 (6h Cir. 2004) ("[T]he ERISA claim nonetheless must be dismissed without prejudice for failure to exhaust administrative remedies." (citing *Miller v. Metro. Life Ins. Co.*, 925 F.3d 979, 986 (6th Cir. 1991)).

Plaintiff does not move for leave to amend or contest Plaintiff's arguments. Rather, Plaintiff argues that if his "state law claims are preempted by ERISA, then his claim for bad faith goes away because ERISA does not recognize that cause of action" but his "central claim for benefits owed under an ERISA-qualified plan fall squarely within the scope of the civil enforcement provision of ERISA." (Doc. 10.)

This Court cannot, however, *sua sponte* morph Plaintiff's state law claims for wrongful denial of benefits under the Life and Accidental Death & Dismemberment Insurance into properly-pled ERISA claims. Plaintiff must move for leave to amend his Complaint and then properly plead ERISA claims, but Plaintiff has failed to do so. This Court, therefore, does not have to address Prudential's argument related to leave to amend.[6]

---

[6] This Court will note, though, that there is a factual dispute as to whether Plaintiff has indeed exhausted his administrative remedies. *Compare* (Doc. 3) ("Plaintiff . . . has acted in good faith to fully exhaust any administrative remedies under the policy.") *with* (Doc. 7) ("Moreover, any attempt by Plaintiff to amend his Complaint would be futile at this time because Plaintiff failed to exhaust his administrative

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

 s/ Algenon L. Marbley
**Algenon L. Marbley
United States District Judge**

**Dated: March 8, 2012**

---

remedies."). Moreover, courts in this Circuit have granted leave to amend in circumstances similar to this one where state law claims have been preempted by ERISA. *See Shepherd v. Dana Corp.*, No. 98–1770, 2000 WL 191822, at *1 (6th Cir. 2000) (explaining that the district court adopted the magistrate judge's report and recommendation that plaintiff's state law claims were preempted by ERISA, but that plaintiff should be granted leave to amend her complaint to include ERISA claims).